```
 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3         BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE

 4   --------------------------------x

 5   UNITED STATES OF AMERICA,

 6
                    v.                Case No. CR 04-0107 (JSW)
 7
     BRIAN DICKIE WATERS,
 8
                    Defendant.
 9
     --------------------------------x
10
                                      San Francisco, CA
11                                    May 18, 2006
                                      3:15 P.M.
12                                    (20 pages)

13

14                       APPEARANCES

15   KEVIN V. RYAN
         United States Attorney for the
16       Northern District of California
     BY: ALEXIS HUNTER
17       Assistant United States Attorney

18   V. ROY LEFCOURT
         Attorney for Defendant
19
     ROBERT TENNEY
20       Probation Office

21

22

23                        SENTENCE

24

25
```

CONNIE KUHL, RMR, CRR
Official Reporter - U.S. District Court (415) 431-2020

000036

Thursday, May 18, 2006

DEPUTY CLERK: CR 04-107, United States versus Brian D. Waters. Counsel, step forward and state your appearances.

MS. HUNTER: Alexis Hunter on behalf of the United States.

THE COURT: Good afternoon.

MR. LEFCOURT: Roy Lefcourt for Mr. Waters, who will be present momentarily.

THE COURT: Good afternoon.

PROBATION OFFICER: Robert Tenney, Probation Office.

THE COURT: Good afternoon, sir.

Good afternoon, Mr. Waters.

THE DEFENDANT: Good afternoon.

THE COURT: Are we ready to proceed for sentencing, Counsel?

MR. LEFCOURT: Your Honor, this is actually one of the more bizarre situations that I've dealt with. The Court has been very generous in continuing the sentencing in this matter. The last time we were before this court I advised the Court that I had made contact with Nancy Rue, Assistant United States Attorney from Boston, Massachusetts, and I was hopeful of resolving the matter. Mr. Waters was to get a Rule 20 on this other Boston matter which is related in the presentence report.

The reason I didn't advise the Court is I have been calling the Boston office on the average of three times a week,

1  trying to get some type of understanding as to what was taking
2  place. I have to say that Miss Hunter has been extremely
3  helpful in attempting to get some type of understanding as to
4  what was going on there. And for the lack of a better -- until
5  literally last night -- I mean, last night, meaning after I had
6  left the office, we had -- and she had e-mailed the office a
7  number of times -- we had absolutely zero contact. That office
8  has reassigned this case, not recently but before, numerous
9  times, and it took a tremendous amount of time for their office
10 simply to evaluate the nature of the drug.
11         I don't mean to belabor the point, but literally last
12 night Miss Rue of the Boston office contacted my office and
13 advised me that she has submitted a Rule 20 proposal to their
14 office, she was having the memo sent around her office, and
15 that she expected that it would probably be approved.
16         Because of that, and I didn't have any time to let the
17 Court know since it came in after I left the office last night,
18 Mr. Waters is respectfully requesting the Court to grant him
19 one last continuance in order that we can have the Rule 20 and
20 have both cases sentenced before your Honor at the same time.
21 I spoke to Miss Hunter about this. The only issue I see, she's
22 going to be taking a leave of absence for approximately two
23 months.
24         Other than that, we're requesting a continuance to
25 whatever date is convenient for all the parties.

1    THE COURT: Miss Hunter?

2    MS. HUNTER: Your Honor, I agree with Mr. Lefcourt.
3  We know that your Honor has been -- allowed us to, you know,
4  continue this case in an effort to -- repeatedly, in an effort
5  to try to resolve both matters. And I have to agree with
6  Mr. Lefcourt that both of us have made numerous attempts to try
7  to wrap this up. So it wasn't for lack of effort on our part.
8  I believe they just happen to work a lot slower over in Boston,
9  and -- as demonstrated by this case. I don't know if that's
10 the norm, but it has been the case all along here with
11 different AUSAs being assigned and then the process of getting
12 things approved or even getting it together so that we could
13 all talk and figure out if we could resolve both of these
14 matters at the same time. I know Mr. Waters is eager for that.

15    I did speak with Miss Rue today, and she indicted to
16 me that it would probably take 21 days to get approval from her
17 office even though, you know, she has submitted these
18 documents.

19    So again, I think to some degree, that shows the level
20 with which things move over there in Massachusetts. I know
21 it's further complicated by the fact that as of the end of
22 business today I will be gone for two months on personal leave.

23    But I have no opposition to it, your Honor. And I,
24 too, would like to wrap up this case and the other one. But I
25 am prepared to proceed forward if your Honor so requires.

1        THE COURT: All right. Well, my inclination is to
2   deny the request for a continuance. The case has been pending
3   long enough. I have no assurance whatsoever -- and I'm not
4   blaming Mr. Lefcourt and I'm certainly not blaming government
5   counsel, this government counsel, for that delay, but the case
6   has been around; the defendant pled a long time ago. It
7   certainly wouldn't be appropriate to take into account any
8   further plea on the sentence this Court would impose today.
9        But given the time estimates, given what's gone down
10  before, I don't think it's appropriate to continue the sentence
11  and I will proceed directly to sentencing in this case today.
12       With that said, the Court has received a presentence
13  report and the sentencing memoranda from both sides as well as
14  other materials, letters and the like, on behalf of Mr. Waters.
15  Is there anything else that the Court should be considering
16  other than what it has mentioned?
17       MS. HUNTER: No, your Honor.
18       MR. LEFCOURT: No, your Honor.
19       THE COURT: All right.
20       Let me start with government counsel. Are there any
21  objections to any matters contained in the presentence report?
22       MS. HUNTER: No, your Honor.
23       MR. LEFCOURT: No, your Honor.
24       THE COURT: No factual objections?
25       MR. LEFCOURT: None that I'm aware of.

```
 1          THE COURT:  All right.  So let me, in trying to
 2  summarize the parties' positions and the Probation Officer's
 3  positions and the options available, this is a pretty
 4  complicated case from a sentencing perspective.  So as I
 5  understand the basic calculation, the guideline calculation
 6  would be a total offense level of 31.  Is there any dispute
 7  about that?
 8          MS. HUNTER:  Not from the government, your Honor.
 9          MR. LEFCOURT:  No, your Honor.
10          THE COURT:  As a starting point.  With respect to the
11  criminal history category, the calculation is criminal history
12  Category 3.  Putting aside for a moment the request for a
13  downward departure with respect to that, do the parties agree
14  that, in the first instance, that Category 3 is the appropriate
15  calculation?
16          MS. HUNTER:  Yes.
17          MR. LEFCOURT:  The answer is yes on behalf of the
18  defense, your Honor.
19          THE COURT:  All right.  So the first question then
20  is -- so with that said, and the calculation, based upon an
21  initial calculation of offense level 31 and criminal history
22  Category 3, the sentencing range is 135 to 168 months.
23          And so now I want to consider the question of downward
24  departure, and I read the government's papers, but I'll hear
25  whatever else you want to say at this point.
```

            MS. HUNTER: Your Honor, just on that point, the government agrees with Probation. We do believe that Mr. Waters's criminal history is over represented since at least three of his convictions are driving with a suspended license. So he received three points alone from that. He has another misdemeanor conviction for a threat crime with intent to terrorize. So the three convictions for the, I guess, the trafficking, vehicle trafficking offenses, bump him automatically up into a higher criminal history category. And I think Mr. Tenney said it best when he said that Mr. Waters appears to be different than most defendants who are put in criminal history Category 3.

            So that was the reason why, your Honor, the government agrees that the Court should -- and requests that the Court depart down one level so that he'll be in criminal history 2.

            The government does not agree that the Court should grant the departure down to criminal history Category 1. While we're asking the Court to not count all the points, I don't think that it's appropriate not to consider any of the driving with the suspended or revoked license convictions, especially in the light there were three of them. So we would ask the Court to consider the reduction to one offense level. So, one level down, but not to category history 1, which would require the court, in essence, to totally discount any of those convictions.

```
 1              THE COURT:  But you're not asking for -- you're not --
 2    you're asking for that, and then you're asking for sentencing
 3    below the guidelines, right?  You're asking for a variance
 4    below the guidelines?
 5              MS. HUNTER:  Yes, your Honor.  120-month sentence.  It
 6    would put him into 121 to 151 months.  I'm asking that it --
 7    that he be sentenced to 10 years.
 8              THE COURT:  So you're asking for a variance below the
 9    guidelines?
10              MS. HUNTER:  Yes.
11              THE COURT:  And you're aware that the Attorney General
12    of the United States has excoriated the judiciary for giving
13    downward departures below -- downward variations, and saying
14    that the judiciary is abusing its discretion in giving such
15    downward deviations?  Are you aware of that?
16              MS. HUNTER:  Yes, your Honor.
17              THE COURT:  What level of approval do you have with
18    the government recommending a below guideline sentence?
19              MS. HUNTER:  Your Honor, I did speak with my
20    supervisor and got approval to recommend the proposed sentence,
21    and especially in the light of fact that the government is
22    going along with the initial recommendation of Probation.  So I
23    did get approval from my supervisors to request the 120-month
24    sentence.
25              THE COURT:  What I want to say is this:  That the
```

1   Attorney General's position has no effect on this Court. I
2   think it's an assault on the separation of powers. I think
3   it's inappropriate and I think it's an outrage.
4       But I want to make sure that the people who are in the
5   field speaking for the Attorney General are in sync with what
6   the Attorney General is telling the Court, because I heard him
7   say it last week, personally. He said it to me. And I want to
8   make sure that you know I'm not going to accept what he says in
9   that most of the downward departures are coming from the
10  government requests, not from the Court; and, Number 2, it
11  would be inappropriate for the Court to take into account
12  anything this attorney general says about what is appropriate
13  for sentencing except in his capacity as a member of the
14  executive branch.
15      But you'd like to know now on the merits. You do a
16  lot of these narcotics cases.
17      MS. HUNTER: Yes.
18      THE COURT: Please justify why this particular
19  defendant, given the quantity of drugs that -- as to which
20  there's no dispute. There's no dispute about the presentence
21  report, the amount of drugs that he was dealing. Why should he
22  be treated essentially leniently.
23      MS. HUNTER: Well, I think, your Honor, in this
24  instance, but for the fact that he has a higher criminal
25  history category, I think he is -- would be treated similarly

1  situated to other defendants. In this case, setting aside the
2  Boston matter, what he's charged with and what he was convicted
3  of was one sale to a confidential informant, the half-pound
4  sale of crystal methamphetamine for $6500. So I don't think
5  that a 10-year sentence for Mr. Waters, who has sustained four
6  prior misdemeanor convictions, and the fact that this one sale
7  is different from other defendants in narcotics cases that I've
8  prosecuted.
9        THE COURT: Well, I understand your position with
10 respect to what the defendant pled guilty to.
11       MS. HUNTER: Right.
12       THE COURT: But the presentence report, which again,
13 the facts of which are not contested, says in Paragraph 6 that
14 a confidential informant was purchasing one pound per month
15 from the defendant of Ice. That the defendant is a dealer of
16 multi pound quantities of meth. That's Paragraph 5. And at
17 the time the defendant was arrested, a loaded .45 caliber
18 pistol was found under his bed, scales, cash. Are you
19 characterizing this defendant as a low level dealer?
20       MS. HUNTER: Well, your Honor, I think he is a --
21 would be characterized as a street level dealer. I wouldn't
22 characterize him as someone who was a leader organizing other
23 individuals or running a drug trafficking organization. I do
24 acknowledge that there was another individual who was in the
25 Boston case, Mr. Washington, and it appears at least in that

```
 1   case it's alleged that they were distributing methamphetamine
 2   via the mail back to Boston.
 3          But I would characterize him as a street level, kind
 4   of a mid level narcotics dealer.
 5          THE COURT:  Anything further?
 6          MS. HUNTER:  No, your Honor.
 7          THE COURT:  Mr. Lefcourt?
 8          MR. LEFCOURT:  First of all, in terms of the prior
 9   convictions, your Honor, two of them are within, at least it
10   appears from my reading of it, within two weeks of each other
11   back in 1996 when Mr. Waters was a relatively young man, and
12   which all three of the convictions have to do with driving.
13   I'm not saying they aren't important, but the distinction of
14   what I would call the impact under the federal sentencing
15   guidelines is simply out of proportion to what the nature of
16   the crimes were.
17          In response to the Court's second issue, I think a
18   sentence of anywhere over five years, at least from my
19   perspective, for someone who has never done any significant
20   period of time in either a county jail or a state prison or a
21   federal institution sends a message to whatever gets into
22   trouble.  Those are significant sentences.  Mr. Waters,
23   regardless of what sentence the Court imposes, is going to be
24   dealt a significant loss of liberty, and the impact will be
25   significant no matter what it is.  So he's going to be paying
```

1  dearly, and the loss of his freedom, and I don't think, to be
2  frank with the Court, maybe this is my own philosophical
3  distinction, is that the difference between six, eight, 10 12,
4  14 -- whatever the years are, they're obviously significant to
5  the individual.  I don't think once you go over a certain
6  number that the deterrent impact is that much more significant.
7  It's the initial sentence and the initial period of time that a
8  person does.
9          I think it's better to get people, especially people
10 like Mr. Waters, who obviously is bright and intelligent and
11 who can be successful and actually ran a successful business,
12 and from my reading, his drug problem probably got more
13 involved in this than anything else.  You know, after awhile,
14 simply it's just warehousing people, and I don't think that's
15 necessarily in the interest of society either.  He's going to
16 pay a dear price for the mistake he made.
17         THE COURT:  Let me ask you a question before you go
18 on.  That is:  On the question of essentially a downward
19 departure based upon overstatement of criminal history, what
20 you say and what the government counsel are urging the Court,
21 and certainly valid in terms of there being a number of motor
22 vehicle violations, but it's also uncontested that he had a
23 previous juvenile problem when he was age 16 where he,
24 according to the report, and again it's uncontested, in a
25 drive-by shooting, shot three people with a shotgun.  And

1   that's not even included in the calculation of his criminal
2   history. So how do you square that?
3       MR. LEFCOURT: Two different ways, your Honor. First
4   of all, my first argument or position would be: That was when
5   he was very young. He was 16 years of age. He's significantly
6   older now.
7       Number 2, nothing in anything that he's done since
8   then is in any way related to violence against people. Drugs
9   are -- can be interpreted as that, but in terms of the kind
10  case that the Court is talking about which cause injury to
11  another person through guns or knives, that's not the situation
12  here.
13      He made mistakes. In fact, in reading the report, he
14  had such a chaotic youth from his family, it's amazing that
15  he's turned out in many ways as centered as he has. So I don't
16  think that that was particularly relevant in that, first of
17  all. From my point of view, once again, if you're not
18  certified as an adult, I don't think that really should be
19  considered as a point, or even as consideration for the Court's
20  consideration.
21      He's not a violent man.
22      THE COURT: How -- you say that, but he had a .45
23  caliber pistol under his bed. Loaded.
24      MR. LEFCOURT: Assuming that's true, you have to
25  relate it: That was in his own home. The issue was, it's not

1    illegal for him have a pistol. It's not like the gentleman you
2    had just recently which was ex-felon in possession of a gun.
3    That's not Mr. Waters. It wasn't against the law for him to
4    have a pistol.
5             Can I have a moment, your Honor?
6             (Off the record)
7             THE COURT: Sure.
8             MR. LEFCOURT: And Mr. Waters wanted me to mention
9    something, that he had actually been robbed, and not through a
10   drug deal, but from a member of his family, but for
11   self-protection, he was allowed to have --
12            (Off the record)
13            MR. LEFCOURT: Mr. Waters also wanted me to advise the
14   Court that, which I don't recall at this time, but he said it
15   was actually in the newspapers that there was a home robbery
16   invasion at his house, at which he was not participating,
17   obviously, but there was obviously an invasion at the house
18   also.
19            THE COURT: Anything further?
20            MR. LEFCOURT: No, not on that issue.
21            MS. HUNTER: Nothing further, your Honor.
22            THE COURT: Mr. Waters, this is your opportunity to
23   address the Court before the Court imposes sentence.
24            THE DEFENDANT: Judge White, I'm not the same person
25   that was locked up two years ago. I'm clean and free of drugs.

```
 1  My drug habit was what propelled me to do a lot of the things
 2  that I did.  I take full responsibility for those things and I
 3  am totally remorseful for those things.  Totally sorry for
 4  those things that I have done.
 5          I know, free and clean of drugs, that I can be a
 6  productive citizen.  I have a very loving family.  My wife is
 7  in the back in the audience.  I have four kids that I want to
 8  be there for -- to stop them from making the same mistakes that
 9  I've made.
10          Your Honor, I plead with this Court for mercy, you
11  know.  I agree that I have done some terrible things and I need
12  to be punished for them, yes, but I plead for mercy, and,
13  actually, more rehabilitation and punishment.  I'm not too far
14  gone.  You know, I can be productive.  You know, I was
15  raised -- I was raised properly.  I just took some bad mistakes
16  and bad choices, you know.  Drugs was one of them.
17          I'm clean now, I've been clean for two years.  I'm
18  free of it.  And I know and I see what those mistakes are.
19  They destroyed my life than, and I know that being clean and
20  sober will help me rebuild my life.
21          I'm just asking the Court for another chance from you
22  to be with my family.  I've been wrong in every account of what
23  I've done, I'm so sorry for it.  I beat myself up every day
24  over it.  I have another case that I'm dealing with, except
25  that I need help from you.  I really need help from you.  Right
```

```
 1   now, it would be a terrible blow for me to be sent to Boston to
 2   deal with this other case.  I've lost a child since I've been
 3   locked up.  My mom is ill and dying of a disease that they
 4   don't even know how to cure.
 5           So I'm asking for help from you, your Honor.  Whatever
 6   you can do, whether or not it's give us the time needed to put
 7   both these cases together, or leniency.  But I'm sorry.  And I
 8   guarantee you you will never see me in your courtroom again if
 9   given the opportunity to get back to my family as soon as
10   possible, your Honor.
11           THE COURT:  Anything further?
12           MS. HUNTER:  No, your Honor.
13           MR. LEFCOURT:  No, your Honor.
14           THE COURT:  All right.
15           All right.  Well, first of all, the first matter that
16   the Court needs to consider is the request by the government
17   for a downward departure based upon overstatement of criminal
18   history category, which was joined in by the defense, and
19   that's under U.S. Sentencing Guideline 4A 1.3(b)(1).  Based
20   upon the information before me, I believe, although I have some
21   hesitation because of the earlier matter, the juvenile matter,
22   it's very serious and not counted, I'm persuaded that this
23   defendant does not fit within criminal history Category 3, and
24   therefore I'm going to grant the request of the parties for a
25   downward departure so that the defendant would be in criminal
```

1  history Category 2 at a total offense level of 31.
2           I don't believe that any further downward departure,
3  as requested by the defense and not joined in by the
4  government, is appropriate.
5           So, under those circumstances the appropriate the
6  guideline calculation would be level 31, criminal history
7  Category 2 for a range of 121 to 151 months. And that's where
8  the Court starts from in its analysis.
9           And the Court is obliged, Mr. Waters, to look at all
10 of the factors that the law provides. In your case, one of
11 the -- the factor that is probably -- the two factors that are
12 probably the most salient are reflecting the seriousness of the
13 offense and promoting respect for the law and providing just
14 punishment for the offense. That's one factor that the Court
15 is to consider. The second one is affording adequate
16 deterrence to criminal conduct.
17          As mentioned in the papers, and as we all know,
18 methamphetamine is a scourge on our society. It's ruining our
19 society. It's ruining our children. It's just so pervasive
20 that no part of our society is immune from the effects of
21 methamphetamine. It's a terrible, terrible thing, and your
22 statement that it was your drug dealing -- your drug habit that
23 caused you to get involved is something that the Court accepts.
24 But on the other hand, given the quantities with which you were
25 apparently dealing, you were well beyond something that could

```
 1   be called personal use or something that was there to satisfy a
 2   habit.  It was there to make money.  And I think that it's
 3   important that those people who deal in this terrible drug need
 4   to get the message.
 5            On the other hand, you do have this other case, which
 6   I have refused to delay this case so that case could be
 7   resolved, but given that you no doubt will be facing additional
 8   time, perhaps, because you have this other charge, the Court,
 9   in taking that into consideration, will impose a sentence lower
10   than the sentence that I would have imposed, were it not for
11   this Boston case.
12            So with all of those factors in mind, pursuant to the
13   Sentencing Reform Act of 1984, it is the judgment of the Court
14   that Brian Waters is hereby committed to the custody of the
15   Bureau of Prisons to be imprisoned for a term of 130 months.
16   The Court recommends that the defendant participate in a Bureau
17   of Prisons residential drug abuse treatment program.  Upon
18   release from imprisonment, the defendant shall be placed on
19   supervised release for a term of five years.  Within 72 hours
20   of release from the custody of the Bureau of Prisons, the
21   defendant shall report in person to the Probation Office in the
22   district to which the defendant is released.  While on
23   supervised release, the defendant shall not commit another
24   federal, state or local crime; shall comply with the standard
25   conditions that have been adopted by the this Court; and shall
```

```
 1   comply with the following additional conditions:
 2           One, the defendant shall participate in a program of
 3   testing and treatment for drug or alcohol abuse as directed by
 4   the Probation Officer until such time as the defendant is
 5   released from treatment by the Probation Officer.
 6           The defendant is to pay part or all of the costs of
 7   his treatment in an amount not to exceed the cost of treatment,
 8   as deemed appropriate by the Probation Officer.  Payment shall
 9   never exceed the total cost of urinalysis and counseling.  The
10   actual co-payment scheduled shall be determined by the
11   probation officer.
12           Two, the defendant shall make an application to
13   register as a drug offender pursuant to state law.
14           Three, the defendant shall submit his person,
15   residence, office, vehicle or any property under his control to
16   a search.  Such a search shall we conducted by a United States
17   Probation Officer at a reasonable time and in a reasonable
18   matter based upon reasonable suspicion of contraband or
19   evidence of a violation or condition of release.  Failure to
20   submit to such a search will be grounds revocation.  The
21   defendant shall warn any residents that the premises may be
22   subject to said searches.
23           Four, the defendant shall not own or possess any
24   firearms, ammunition, destructive devices or other dangerous
25   weapons.
```

```
 1            Five, all employment shall we approved in advance by
 2   the Probation Service.
 3            It is further ordered that the defendant shall pay the
 4   United States a special assessment of $100, due immediately.
 5            The defendant shall be enrolled in the Bureau of
 6   Prisons Inmate Financial Responsibility Program.
 7            Payment shall be made to the Clerk of the Court,
 8   U.S. District Court, 450 Golden Gate Avenue, Box 36060,
 9   San Francisco, California 94102.
10            The Court finds that the defendant does not have the
11   ability to pay and therefore orders waived any fine in this
12   case.
13            Anything further, Counsel?
14            MR. LEFCOURT:  Just asking to the Court for a
15   recommendation for an institution in the State of California.
16            THE COURT:  Any objection?
17            MS. HUNTER:  No, your Honor.
18            THE COURT:  The Court will so recommend to the Bureau
19   of Prisons, consistent with their other policies, that he can
20   be incarcerated in the State of California.
21            Thank you, Counsel.
22            MS. HUNTER:  Thank you, your Honor.
23            (Adjourned)
24                                oOo
25
```